## FARMER v. PRITCHARD.

Patent Appeal No. 3152.

Court of Customs and Patent Appeals.
May 29, 1933.

Otto F. Barthel, of Detroit, Mich., for appellant.

Whittemore, Hulbert, Whittemore & Belknap, of Detroit, Mich. (William H. Gross, of Detroit, Mich., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

An interference was declared by the United States Patent Office between the application for patent, serial No. 37,093, filed by the appellant, Albert J. Farmer, on June 15, 1925, and the application of William S. Pritchard, the appellee, serial No. 80,686, filed January 11, 1926, for a similar invention.

The subject-matter of the interference was set forth in three counts, which are as follows:

"1. In a valve, a chamber connected to a part to be lubricated and to a lubricant supply, an element reciprocally mounted in said chamber for expelling a previously measured quantity of lubricant from said chamber and for permitting a measured quantity to enter said chamber from said lubricant supply and means for transferring said latter measured amount of lubricant to the discharge end of said chamber including a by-pass extending circumferentially around the piston.

"2. In a valve, a chamber communicating with a lubricant supply and with a part to be lubricated, means for expelling a quantity of lubricant from said chamber to the part to be lubricated and for permitting a measured quantity to enter said chamber from said lubricant supply and, a by-pass extending circumferentially around the piston and communicating with the chamber upon opposite sides of the piston for transferring said meas-

ured supply to the discharge end of said chamber.

"3. In a valve, a chamber communicating with a lubricant supply and with a part to be lubricated, a piston reciprocably mounted within said chamber for expelling a quantity of lubricant from said chamber to the part to be lubricated and for permitting a measured quantity to enter said chamber from said lubricant supply, and a second chamber spaced from and extending circumferentially around the chamber aforesaid and communicating with the latter upon opposite sides of the piston for transferring the measured quantity of lubricant to the discharge end of said chamber."

The appellee moved to dissolve the interference on two grounds: First, that the counts of the interference did not read upon Farmer's disclosure; and, second, that the Farmer structure was inoperative. The Law Examiner concluded that the Farmer device would operate, and, in this conclusion, he took into account that there would be a leakage around the piston of the valve, which will be hereinafter more fully described. The Law Examiner was also of opinion that there was doubt whether the counts of the interference required a direct measure of a quantity of lubricant in one chamber, and transfer of the measured amount to another chamber. Giving a broad interpretation to the counts of the interference, he was of opinion that the motion to dissolve should not be granted.

Testimony was taken by both parties, and a full record was presented not only to the Patent Office tribunals but to this court.

The Examiner of Interferences, in a carefully prepared statement, awarded priority to the junior party Pritchard, the appellee here. He held that Pritchard had failed to show that the Farmer device was inoperative to perform the object of the Farmer invention, as it was originally disclosed in the Farmer application. The Examiner of Interferences was further of the opinion that the counts of the interference, having been taken from Pritchard's application, should be construed as requiring a structure in which a measured quantity of lubricant would be transferred from the inlet end of the valve to the discharge end thereof, through a by-pass or a chamber, or by some means that include such a by-pass, as specified by the various counts. He further concluded that Farmer's device did not operate in the manner detailed in the counts, because no element of his device which might be termed a by-pass, or

chamber, would function in the manner of the by-pass or chamber required by the counts.

The Board of Appeals was of the opinion that the Examiner of Interferences had arrived at the correct conclusion, and stated: "The appealed counts either specifically state or necessarily require that the measuring must occur before this quantity is transferred to the delivery chamber of the pump."

The senior party Farmer has appealed to this court. The only question at issue here is conceded to be that of whether the counts of the interference read upon Farmer's disclosure. There is no question of operativeness involved here.

It becomes necessary, at this time, to examine the disclosures of the parties with a view of ascertaining what the methods of operation of the two devices are.

Pritchard's device is a measuring valve designed for use in connection with a lubricating system, such as is ordinarily known as the "one-shot system," and by which a measured amount of lubricant is injected into certain bearings, where lubricant is required, by a forward impulse of a piston. The effort of both Pritchard and Farmer was to produce a device in which the amount of lubricant thus to be delivered would be the same in each case, and in which one forward impulse of a piston in the valve would deliver this measured amount. In both devices, the lubricant is delivered to the chamber in the valve from a lubricating supply under pressure, and the pressure of this lubricant causes the operation of the valve. When the piston in the valve is to be moved forward, pressure is applied from the lubricating supply chamber. After the forward impulse, this pressure is relieved by some mechanical device not involved in this invention, and the piston is then enabled to return to its original position in the rear, or supply, end of the valve. In each case, the front end of the measuring valve is applied by means of a screw thread to the conduit which connects the measuring valve to the bearings desired to be lubricated.

Pritchard's valve consists of an elongated round chamber containing the measuring valve mechanism. This valve mechanism consists of certain movable parts which are arranged to operate in the interior of the chamber, and which consist of a lubricant expelling piston which is formed with a forwardly pin shaped projecting extension, and which expelling piston moves backward and forward within the interior of the chamber as the lubricant behind it forces it forward, or as a

spiral spring, arranged in the chamber ahead of it, pushes it backward after the pressure of lubricant entering the valve is reduced. Between the interior of this inner chamber and the outside casing of the valve is a circular chamber extending completely around the inner chamber, which is known as a by-pass, which by-pass communicates with the inner chamber by small circular openings. The expelling piston, heretofore mentioned, is also provided with a rearwardly projecting extension, or pin, which has a slidable connection through another moving piston member, which is placed in the inner chamber back of said expelling piston. The rearwardly projecting extension of the expelling piston, when said piston is at its rearward position in the valve, extends back through a hole in the center of said rearward, moving, piston member, which piston member is denominated in Pritchard's drawings as "33." The lubricating expelling piston is therein denominated as "28," the rearwardly extending pin as "32," and the forward extension of the lubricating expelling piston as "29." The by-pass chamber in the valve is known as "24." This by-pass chamber has two sets of openings communicating with the inner chamber of the valve; the openings in the front end of the valve being known as "37," and those in the rear end being known as "36."

When the entire valve mechanism is at rest, the expelling piston "28" rests upon and against the front of the moving piston part "33," and the rearward extending pin is within and extending through the center of said moving part "33."

When it is proposed to force a quantity of lubricant into the bearings, it being presumed that the discharge end of the inner chamber of the valve and the by-pass are full of lubricant, the inventor thus describes the operation of the device:

"With the parts in the position illustrated in Fig. 1 lubricant under pressure is supplied through conduit 14 and acts upon the end of pin 32 and upon the exposed face of piston 33 to move these parts, against the action of spring 35, to the position illustrated in Fig. 2, in which position piston 33 has seated itself upon the circumferential shoulder 26. In this position of the parts it should also be noted that piston 33 has closed ports 36 so as to confine the lubricant contained in the chambers 24 and 27 to prevent the passage of this lubricant rearwardly past the piston 33. It will be understood that chambers 24 and 27 are practically filled with lubricant from the preceding operation, lubricant being supplied thereto in a manner to be more fully hereinafter described.

"During the continuance of the pressure of the lubricant in chamber 34 behind piston 33 and the end of pin 32 this pressure acts upon the end of pin 32 to effect a further movement of piston 28, it being obvious that piston 33 remains stationary being seated against the shoulder 26. The continued movement of piston 28 expels the lubricant contained in chamber 27 outwardly through bore 19 into the bearing to be lubricated, the feeding of the lubricant continuing until the valve portion 30 of extension 29 seats upon the valve surface 21. Practically simultaneously with the seating of these valve portions the apertures 37 are closed by the piston 28.

"This position of the parts is illustrated in Fig. 3 and at this time the pin extension 32 has been moved out of engagement with the piston 33 so as to open communication through the piston 33 between chambers 34 and 27. Therefore, lubricant is supplied to the space between pistons 28 and 33.

"When pressure upon the lubricant supply has been relieved sufficiently to permit the spring 35 to predominate piston 28 will commence its return movement. This position of the parts is illustrated in Fig. 4. The piston 28 will move until the pin 32 enters into the bore of piston 33 whereupon escape of the lubricant confined between the pistons is prevented and the pistons will move as a unit toward the right under the influence of spring 35. This movement will continue until piston 33 passes apertures 36 and thereafter the continued movement of piston 28 will expel the lubricant confined between the pistons through the apertures 36 into chamber 24. It is apparent that this is possible because ports 36 have been uncovered by piston 33. Piston 28 moves under the action of spring 35 until it again assumes its original position illustrated in Fig. 1.

"From the foregoing it will be readily apparent that only measured quantities of lubricant can be conducted from the source of supply to the bearing irrespective of the length of time the lubricant supplied to the valve is under pressure. The sequence of operations are such that the pressure of the lubricant supplied first operates the valve parts to expel a quantity of lubricant into the bearing and to thereafter measurably receive a new supply. The return movement of the valve parts thereafter force this previously measured supply through the by-pass formed by the chamber 24 into the chamber 27 where

it is in position to be forced into the bearing on the next lubricating operation. Obviously the amount of lubricant fed to the bearing may be controlled by the length of piston 33 so that the valve capacity is variable."

In the Farmer device, the inventor shows a like longitudinal round outside chamber, and a circular chamber or by-pass surrounding the inner chamber of the valve. This by-pass chamber is also provided with front openings into the inner chamber known as "21" and rear openings known as "20." A movable piston operates within the valve which normally is held against the back end of the inner chamber by means of a spiral spring, which is located within the inner chamber and in front of the piston.

Within the inner chamber a piston operates which is shown as filling the interior of the chamber circumferentially, and has a forwardly projecting pin known as "14." Around the center of the moving piston, which piston is known as "9," extends a circumferential groove known as "19." This groove has openings therein which are intended to allow lubricant from the rear of the piston to enter the center of the piston through an opening known as "18," and to be forced through said openings in said groove through the said ports "20" into the before mentioned by-pass chamber when the said openings in said piston are in alignment with said ports "20."

The inventor thus describes the operation of his device in his specification:

"It will be understood that the forward part of the cylinder is now charged with lubricant, and upon lubricant pressure being again applied to the piston the said piston will force such lubricant forwardly through the outlet 12 and past the check valve 16 until the valve member 14 enters the enlargement 13 of the outlet passage 12 when further flow through the said outlet is cut off by the said valve member, so that a definitely measured amount of lubricant has then been forced through the said outlet 12. The piston nevertheless continues its forward movement during which part of the remaining lubricant in the forward part of the cylinder passes through the port 21 to the chamber 10 until the piston has completed its forward stroke, whereupon the balance of the space within the said chamber 10 is again filled with lubricant passing through the passages 18 and 19 of the piston and port 20 of the cylinder, thereby replacing the lubricant which has just been discharged through the outlet 12.

"Upon again relieving the pressure of lu-

bricant in the pipe 7 the spring 11 forces the piston back to its original position and the cylinder is again fully charged with lubricant as hereinbefore explained.

"It will be obvious that whatever pressure of lubricant may be utilized the amount forced through the outlet of a measuring valve is definitely governed by the stroke of the piston which takes place prior to the valve member 14 entering the expanded portion 13 of the said outlet 12, and that the apparatus may be devised to feed any desired amount of lubricant upon each operation. Consequently, any number of these measuring valves may be fed at the same time with lubricant from a common source, and each valve will take care of the particular amount of lubricant which it is intended to feed to its particular oil duct, and neither more nor less than such amount, so that these valves lend themselves excellently to use in connection with forced feed lubricating systems.

■■ The question arises whether the counts of the interference which are framed on Pritchard's structure, and which plainly read thereon, and have a definite meaning when read in the light of Pritchard's application, can be read upon Farmer's disclosure. The answer to this question involves, to a considerable degree, exact technical learning. The tribunals of the Patent Office, which have dealt with the question of priority having concurred in their views that the counts did not so read, this court will not feel at liberty to reverse the same, unless it feels that such decisions are manifestly wrong. Fowler v. Dodge, 14 App. D. C. 477; Steele v. Chubb, 58 App. D. C. 26, 24 F.(2d) 468; Gleason v. Dosch, 39 F.(2d) 687, 17 C. C. P. A. 1012; Dorer v. Moody, 48 F.(2d) 388, 18 C. C. P. A. 1188; Hill v. Hill, 54 F.(2d) 950, 19 C. C. P. A. 918; McCreary v. Zworykin, 55 F. (2d) 445, 19 C. C. P. A. 990.

We are, however, convinced that the counts of the interference do not read upon Farmer's application. Laying aside the question of operativeness of Farmer's device, which is not in issue here, it is very evident that the method of operation intended by the counts of the interference is not the method utilized in the operation of Farmer's device.

The first count of the interference is, perhaps, the most favorable to Farmer's contentions, and, if any count of the interference will read upon his disclosure, it is this one. It will be observed that the first count provides for "permitting a measured quantity to enter said chamber," and also for "means for transferring said latter measured amount of

lubricant to the discharge end of said chamber." Obviously, this intends a measurement of a quantity of lubricant in the rear end, or a rear chamber, of the valve, and not in a measurement thereof in the front, or discharge, end of the chamber. This is done by Pritchard's device, by means of the chamber which exists between the lubricating expelling piston and the movable piston part "33," in which chamber an amount of lubricant is trapped, and from which chamber it cannot escape until it flows around through the by-pass chamber into the front end of the inner chamber.

However, according to Farmer, the measurement is performed by the by-pass chamber, from which it is said to pass into the inner chamber, by means of suction of the piston "9" as it returns to its seat in the rear of the inner chamber. Farmer, therefore, shows a transfer, not from the rear of the discharging piston to the front end thereof, but by what seems to the court an entirely different method.

In addition, it is found that, while Pritchard's moving pistons fill the inner chamber, making a closed trapping and discharge chamber, Farmer is forced to the position, in order to show operativeness at all, of claiming that his discharge chamber is filled with lubricant on the return of his piston "9," not only by suction from the by-pass chamber, but by a flow of lubricant from the rear through a supposed clearance between his returning piston and the walls of the inner chamber. His witness Jennings testified that there must be this leakage past his moving valve, and, in answer to inquiries, stated that he did not know whether the discharge chamber and the by-pass chamber would be full of lubricant when the piston had returned to its seat.

The testimony offered by Farmer, and the varying theories he has had as to the operation of his valve, all tend to induce the belief that he is uncertain as to the exact method of operation of his device. They lead the mind, inevitably, to the conclusion that this device does not operate in the method which is obviously called for by the counts of the interference. A technical discussion of these points of difference is not essential here, in view of the careful scrutiny which has been given to this subject by the Patent Office tribunals, especially by the Examiner of Interferences. We will content ourselves with the statement that, in general, we believe their conclusions to be correct.

Counts 2 and 3 of the interference are obviously not readable on Farmer's disclosure. It will be observed that in both cases the counts call for "permitting a measured quantity to enter said chamber," that is, the amount of lubricant is to be measured before it enters the discharge end of the valve. Then, again, the counts call for a by-pass, in count 2 "for transferring said measured supply to the discharge end of said chamber," and, in count 3, "for transferring the measured quantity of lubricant to the discharge end of said chamber."

There is no pretention, on the part of Farmer, that his lubricant is transferred from the rear end of his inner chamber to the front entirely by means of a by-pass, but the insistence is that an amount of measured quantity is thrown into the front or discharge end of the chamber by means of leakage, or seepage, past the cylinder, and by drawing lubricant from the by-pass chamber. As we construe the counts, they call for this to be done solely by means of the by-pass. Inasmuch as Farmer's device does not make any such disclosure, these counts, also, do not read upon his disclosure.

We are satisfied that the decision of the Board of Appeals is correct, and it should be, and is, affirmed.

Affirmed.